UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MYRELL BERGERON** | **CIVIL ACTION NO.** |
| **v.** | **2:21-cv-00507-NJB-KWR** |
| **LCMC** | **JUDGE NANNETTE JOLIVETTE BROWN** |
| | **MAGISTRATE JUDGE KAREN WELLS ROBY** |

**DEFENDANT LCMC URGENT CARE, LLC'S RESPONSE TO
PLAINTIFF'S STATEMENT OF CONTESTED FACTS AND
OBJECTIONS TO INCOMPETENT EVIDENCE OFFERED BY PLAINTIFF
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, LCMC Urgent Care, LLC ("Defendant"), incorrectly identified as LCMC, hereby files this Response to Plaintiff's Statement of Contested Facts and Objections to Incompetent Evidence Offered by Plaintiff in Opposition to Defendant's Motion for Summary Judgment, and states as follows:

I.      **INTRODUCTION**

Defendant hereby responds to Plaintiff's Statement of Contested Facts and objects to certain evidence and statements submitted in opposition to Defendant's Motion for Summary Judgment which, as described more fully herein, are unsupported, incompetently supported, irrelevant, mischaracterized, or misrepresented. This Motion is made without reference to how the evidence and statements do, or do not, respond to Defendant's Motion for Summary Judgment. Defendant filed a separate Reply to Plaintiff's Opposition.

## II.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Civ. P. 56(c)(1) provides: "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(2) provides that a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The rules further require that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4)). As a result, courts cannot properly consider hearsay evidence or unsworn documents. *In re Directech Sw., Inc.*, No. 08-1984, 2009 WL 10663104, at *3 (E.D. La. Nov. 19, 2009) (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)). "[T]he summary judgment evidence need not be in a 'form that would be admissible at trial,' [but] the party opposing summary judgment must be able to prove the underlying facts." *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000) (quoting *Geisserman v. MacDonald*, 893 F.2d 787,

EOK 4866-0203-9317
2918140-000481

793 (5th Cir. 1990)).  The exhibits discussed herein do not satisfy this standard and therefore should not be considered in deciding Defendant's Motion for Summary Judgment.

## III.  ARGUMENT

### A.  Defendant's Response to Plaintiff's Statement of Contested Facts

1.  Myrell Bergeron signed an employment agreement with LCMC Health Urgent Care on February 22, 2019.

   **RESPONSE:**  Response: Denied but immaterial.  Bergeron signed an offer letter and had no employment agreement with LCMC Urgent Care, LLC. *See* Rec. Doc. 32-2, p. 5. Bergeron was employed by Premier Health but did not have an employment agreement with Premier Health either. *See* Rec. Doc. 32-2, p. 5.

2.  Plaintiff disclosed her allergy to shrimp and a prior related worker's compensation injury to LCMC in hiring documents which was signed by the Employee Health Benefits Coordinator, Marie Lambert on February 22, 2019. Plaintiff was asked: "Have you ever had an on the job injury?"  She checked Yes and when asked "If you answered "Yes" please provide the date for each injury and the nature of the injury" she wrote " Yes Allergy Reaction To Shrimp".

   **RESPONSE:**  Admitted that as a Louisiana employee, Plaintiff filled out the required six-page Louisiana Workers' Compensation Second Injury Board Post-Hire/Conditional Job Offer Knowledge Questionnaire wherein her employer is listed as "Premier" and in which she disclosed she had asthma that she had for "life" and for which she had no permanent restrictions.  The prior allergic reaction related to shrimp for which she filed a workers' compensation claim against her prior employer, IMS, is immaterial to whether Defendant provided Plaintiff with an accommodation.

3.  Despite the fact that the form returned by Plaintiff's doctor specifically stated that Bergeron could not be in contact or around shellfish the accommodations, granted by LCMC, still allowed employees to eat seafood while the Plaintiff was working as long as a sign stating "SEAFOOD PRESENT" was up.

   **RESPONSE:**  Defendant admits that the accommodations provided complied with Plaintiff's restriction not to be in contact or around shellfish since there is no evidence employees were permitted to or ever did eat shellfish "around" Plaintiff.  The evidence demonstrates seafood, when consumed, was consumed in a breakroom or conference room with closed doors ten to twenty feet away from Plaintiff's work station.

4.  The "SEAFOOD PRESENT" sign was always up and did not work to give notice to Plaintiff of when seafood was actually present.

   **RESPONSE:**  Objected to as there is no competent or conclusive evidence that the "SEAFOOD PRESENT" sign was always up at all of the clinics at which Plaintiff

EOK 4866-0203-9317
2918140-000481

worked or that a sign stating "SEAFOOD PRESENT" did not give notice to Plaintiff not to enter a place where the sign was posted.

5.     There were no tools in place to monitor if the staff was complying with the accommodations.

       **RESPONSE:**  Objects as mischaracterizes the record evidence.

6.     On February 21, 2020, Plaintiff again had an exposure to seafood which she reported to Jennifer Banham, the medical examiner nurse working with the worker's compensation claim with LCMC.  Ms. Banham reported the incident to Marie Lambert, the Employee Health Coordinator for LCMC via email.

       **RESPONSE:** Defendant objects to this email as inadmissible hearsay. There is no evidence that Bergeron was exposed to seafood at work on February 21, 2020 or that she reported such an exposure to Defendant directly. There is no evidence regarding who allegedly exposed her, what the allergen was, or any other specific evidence of an exposure.

7.     Plaintiff had seafood exposures and self-medicated on April 2, 2020 and April 3, 2020.

       **RESPONSE:**  Denied as conclusory and unsupported by competent record evidence. Plaintiff was not at work on April 2, 2020, *see* Rec. Doc. 32-2, p. 12, and there is no evidence of an exposure or a communication of any exposure to Defendant at any time in April 2020.

8.     Plaintiff complained about staff recurrently eating seafood despite their knowledge of her seafood allergy multiple times. Plaintiff wrote an email to Marie Lambert on February 5, 2020, after two severe seafood exposures incidents, complaining that the staff was bringing in seafood during her shift when they know she was allergic and stating that she feels the staff is trying to get rid of her.

       **RESPONSE:**  Defendant objects to the statement that "Plaintiff complained about staff recurrently eating seafood despite their knowledge of her seafood allergy multiple times" as unsupported by the record evidence provided. Defendant further objects to this statement as DEF_000206 does not support this statement.  Plaintiff's email to Marie Lambert on February 5, 2020 states:  "I just left Dr Acula he has ordered more labs on the 27 of feb Elev wbc could mean infection rechecking He asked me does the staff Want to get rid of you? Brining in seafood when they know you are allergic!!! My answer was I don't know!!" (SIC).  This email was not a complaint to Lambert but Plaintiff's recount of a visit with a doctor and what he asked her presumably based on what she told him, of which there is no evidence.

9.     Plaintiff wrote another email on February 22, 2020 indicating that seafood is deadly to her but that her center manager, Icesis Guy knows this and still allows it when she works and she feels threatened by the behavior.

**RESPONSE:** Defendant objects to this statement as it mischaracterizes the evidence. DEF_000203 provides: "Note from pelican Re seafood free environment This is deadly to me it's in the air I believe this is on purpose icesses knows But yet she allow it when I work. Employees know Tobie stated don't go in Icesses said nothing . Why do they do this Do they want me to leave that bad ? I feel threatened also patients are at risk plus it stinks !why eat it when I am coming in?" (SIC)   Defendant further objects to this statement as lacking context, clarity, or specificity regarding the statements therein.

10.   On March 16, 2020, Plaintiff requested a meeting with HR Director Nick Millet which she recorded. During the meeting, she complained about a hostile work environment caused by her supervisor, Icesiss Guy who harassed her as a result of her complaints about seafood being eaten.

**RESPONSE:** Defendant objects to this statement as there is no evidence submitted to support the statement that Plaintiff requested the March 16, 2020 meeting.  Defendant further objects to the audio file submitted allegedly in support of this statement which does not reflect that Bergeron complained about harassment "as a result of her complaints about seafood being eaten."  Defendant further objects to Plaintiff's reliance on this recording and the purported transcript excerpt thereof as no transcript was produced to Defendant nor has there been any attempt to authenticate the recording or verify it is complete, has not been edited or tampered with in any way, or is otherwise competent evidence.

11.   At no point during these two disclosures by Plaintiff did LCMC engage in the interactive process with Plaintiff.

**RESPONSE:** Defendant objects to this statement as confusing and unsupported by record evidence.

12.   The seafood allergy was open and obvious.

**RESPONSE:** Defendant objects to this statement as unsupported by record evidence. Plaintiff cites the deposition of Bergeron at pp. 12 and 13 in support of this statement which the testimony on those pages in no way does.  Plaintiff's testimony on these pages describes the allergic reaction she allegedly had to a bag of seafood brought in by an employee at a prior employer's workplace.  Bergeron's allergy to seafood was not open and obvious.   And there is no evidence that Defendant ever witnessed Bergeron experiencing the effects of any alleged workplace exposure to seafood.

13.   There was no interactive process or discussions with Plaintiff to craft the accommodations. Plaintiff recalls one meeting with Jaimie Malveaux and Nannette Young prior to receiving the October 23, 2019 email in which she was told about a "Seafood Present" sign.   No other protocols listed were discussed. Plaintiff was told Malveaux had consulted with the ADA and that is all they could do. They did not ask Plaintiff if she thought the sign was sufficient. There was no discussion of any other accommodations except for the sign.

EOK 4866-0203-9317
2918140-000481

**RESPONSE:** Defendant objects to this statement as unsupported by the record evidence and as it mischaracterizes the testimony.

14.     There is no record evidence that any changes or discussions to modify the accommodations were made after this incident by LCMC. In fact, the HR Director at the time, Nick Millet, had never seen the sign and did not know if it permitted seafood or not. Nick Millet also stated that he did not review the appropriateness of the accommodation during his employment with Defendant.

        **RESPONSE:** Defendant objects to this statement as it mischaracterizes the record evidence and is vague and non-specific.  Nick Millet was only employed with Premier for a short time before Plaintiff's termination.  *See* Rec. Doc. 32-2, pp. 10-11, ¶ 10.

15.     On February 21, 2020, Plaintiff again had an exposure to seafood which she reported to Jennifer Banham, the medical examiner nurse working with the worker's compensation claim with LCMC.  Ms. Banham reported the incident to Marie Lambert, the Employee Health Coordinator for LCMC via email.

        **RESPONSE:** Defendant objects to this statement as duplicative of Statement No. 6 and incorporates its response to that statement here.

16.     In the medical records produced by Defendant for Dr. Steen, the physician requested by the Defendant as a result of Plaintiff's worker's compensation claim for the January 15, 2020 seafood exposure incident, indicates that Plaintiff had two other seafood episodes over the last several months.

        **RESPONSE:** Defendant objects to this statement as confusing and as it relies on hearsay and is nonspecific and lacks context and thus is not competent evidence.  The record evidence establishes that Plaintiff had only two reported exposures – September 2019 and January 2020.

17.     On March 13, 2020, Dr. Borgman wrote a letter indicating that Ms. Bergeron was experiencing numerous allergic reactions due to her having a seafood allergy with exposure at work.

        **RESPONSE:** Defendant objects to this statement as it relies on hearsay and is nonspecific and lacks context and thus is not competent evidence.  The record evidence establishes that Plaintiff had only two reported exposures – September 2019 and January 2020.

18.     Plaintiff had seafood exposures and self-medicated on April 2, 2020 and April 3, 2020.

        **RESPONSE:** Defendant objects to this statement as it is only supported by Plaintiff's self-serving allegations and is belied by the record evidence which Plaintiff was not at work on April 2, 2020.  *See* Rec. Doc. 32-2, p. 12.

EOK 4866-0203-9317
2918140-000481

19.     LCMC indicates that Icesiss Guy was in charge of monitoring the accommodations and that staff was supposed to be held accountable for making sure food containers were sealed in the refrigerator.

        **RESPONSE:** Defendant objects to this statement as it is not supported by record evidence.  Plaintiff cites to the deposition of Marie Lambert who did not testify as a corporate representative and does not make determinations regarding who is "in charge of monitoring accommodations."

20.     Plaintiff wrote another email on February 22, 2020 indicating that seafood is deadly to her but that her center manager, Icesis Guy knows this and still allows it when she works and she feels threatened by the behavior.

        **RESPONSE:**  Defendant objects to this statement as duplicative of Statement No. 9 and incorporates its response to that statement herein.

21.     In March, 2020, Plaintiff requested a meeting with HR Director Nick Millet which she recorded.31 During the meeting, she complained about a hostile work environment caused by her supervisor, Icesiss Guy who harassed her.

        **RESPONSE:**  Defendant objects to this statement as duplicative of Statement No. 10 and incorporates its response to that statement herein.

22.     When Icessis Guy was asked how many times she eats seafood while Plaintiff was working with her, Ms. Guy admitted that seafood is a large part of her diet.

        **RESPONSE:**  Defendant objects to this statement as immaterial.

23.     Further, former co-worker Toby Savoie witnessed Icesiss Guy make negative comments about Plaintiff because of her seafood restrictions and witnessed Guy's disregard and/or annoyance for Plaintiff's seafood accommodations.

        **RESPONSE:**  Defendant objects to this statement as lacking specificity, as unreliable, and as hearsay.  Defendant further objects to this statement as immaterial since Guy did not make any decisions regarding whether to accommodate Plaintiff's allergy, whether to terminate her employment, or whether to transfer her to another clinic.

24.     Icessis Guy testified that the clinics never reached a point where they had zero masks in the clinic and that there was enough to get at least one mask if a mask was dirty and tainted and that no one had any grossly dirty masks.

        **RESPONSE:**  Defendant objects to this statement as immaterial and misleading.  The masks Plaintiff took were N-95 masks and there is no evidence that such masks were readily available in the clinics before the shipment was received in April 2020. Additionally, this statement is immaterial because there is no evidence Plaintiff took a mask to replace a dirty mask – the evidence reflects that she took several masks and put them in her purse/bag.

7

25.     There was no notice on the box with masks that indicated no one could take masks or putting a limit on how many a person could take.

        **RESPONSE:** Defendant objects to this statement as immaterial.  There is no dispute that there was a critical, global shortage of N-95 masks and that Bergeron was aware of that fact.  Rec. Doc. 35-1, pp. 13-14, ¶ 33.

26.     Anyone that was bleeding or coughing out blood in their mask are not expected to reuse the masks.

        **RESPONSE:** Defendant objects to this statement as immaterial.

27.     Plaintiff was coughing up blood.

        **RESPONSE:** Defendant objects to this statement as immaterial and lacking context.

28.     Plaintiff did not have to go through HR to get extra masks because of her bloody cough.

        **RESPONSE:** Defendant objects to this statement as immaterial and lacking context.

29.     Masks are kept in the clinic and if she needed one she could just go to where the masks were kept and get one and if she felt as if it was too soiled then she could simply get herself another one.

        **RESPONSE:** Defendant objects to this statement as lacking specificity and immaterial as Plaintiff did not take one mask to replace a soiled one.  She left her allegedly soiled mask on and placed the other she took into her personal bag.  Defendant further objects to this statement to the extent it refers to any type of mask other than an N-95 mask, which is the type of mask Plaintiff took.

30.     Plaintiff testified that Icessis Guy stated" all these masks are missing, all these masks" and that she responded "no, here's a mask, here, I have the mask, here's your mask."

        **RESPONSE:** Defendant objects to this statement as lacking context and immaterial.

31.     Plaintiff testified that she took the masks to use at work, not personal use because she was working in a COVID clinic with a bloody cough.

        **RESPONSE:** Defendant objects to this statement as immaterial as this is not what Plaintiff told Defendant at the time of the incident.  At that time, she disclaimed remembering taking the masks at all and later admitted at her deposition that was not true.  Rec. Doc. 32-3, pp. 17-19, 224:1-226:18.

32.     Plaintiff went into a drawer, took them out of her medicine bag and returned the masks within minutes of taking them and the Plaintiff is shown giving them back to Icessis Guy.

        **RESPONSE:** Defendant objects to this statement as immaterial.

EOK 4866-0203-9317
2918140-000481

33.     All of her actions were done with several employees standing around or near her and

       **RESPONSE:**  Defendant objects to this statement as incomplete and immaterial.

34.     Nick Millet, the HR Director that terminated Plaintiff, had no information that Plaintiff was not going to use the masks for work.  Nick Millet did not include the fact that Plaintiff returned the masks back to Icesiss Guy in his memo memorializing the termination that went to Plaintiff's personnel file.

       **RESPONSE:**  Defendant objects to this statement as it mischaracterizes the evidence and is otherwise immaterial.

35.     When Nick Millet asked Plaintiff about missing masks at the meeting, he did not inform her that the masks he was asking about were masks that were returned.

       **RESPONSE:**  Defendant objects to this statement as immaterial.  There is no evidence that there was any confusion on Plaintiff's part as to why she was in the meeting or what masks were at issue.

36.     After reviewing the video during the deposition, Nick Millet testified that her actions would be misappropriation instead of theft which means temporarily taking an object instead of theft which would mean taking the object and walking out the door.

       **RESPONSE:**  Defendant objects to this statement as it mischaracterizes the record and implies that Millet was shown the entire surveillance video during his deposition, which he was not.  Defendant further objects to this statement as immaterial as it is undisputed that Defendant believed Plaintiff took the masks for her personal use in violation of company policy.

37.     But for Ms. Guy's complaint to Pam Ballard advising that Plaintiff had stolen masks, Nick Millet and Pam Ballard would not have terminated Plaintiff for theft and there is no policy against misappropriation as defined by Mr. Millet.

       **RESPONSE:**  Defendant objects to this statement as it is not supported by and mischaracterizes the evidence.

38.     The denial of Plaintiff's request to transfer from the clinic in Marrero to the clinic in the Gretna to avoid seafood exposures is also an adverse employment action because it would change the conditions of her employment and she could work more.

       **RESPONSE:**  Defendant objects to this statement as not supported by the record evidence and as it is pure, inadmissible speculation.  Defendant further objects on the basis that this statement contains a legal conclusion.

39.     No one could recall why the transfer request was denied.

**RESPONSE:** Defendant objects to this statement as it lacks specificity and context and is misleading. Pam Ballard testified she did not recall denying the request at all and the record evidence shows that Plaintiff did not send the email indicating that she desired a transfer – instead it remained a draft in her inbox. Rec. Doc. 35-22.

40. Plaintiff had to take a month long leave in October, and missed work opportunities and several days in March could work more and have less leave days is a change in the conditions of employment.

   **RESPONSE:** Defendant objects to this statement as nonsensical and immaterial. Defendant further objects to this statement to the extent it suggests that Plaintiff requested to transfer to the Gretna prior to the September 2019 exposure or the month of leave Plaintiff took thereafter. The record reflects that Plaintiff requested the transfer on January 29, 2020.

41. Plaintiff continued to be damaged and exposed to seafood month after month in September 2019, January 2020, February 2020, March, 2020 and in April 2020 and more during the pendency of her employment which lasted 14 months. Neither the conduct or the damages abated until her termination.

   **RESPONSE:** Defendant objects to this statement as unsupported by the competent record evidence. There is no evidence that Plaintiff suffered ongoing damages as a result of exposures in February, March, or April 2020, or that any alleged damages she claims to have suffered were caused by her exposures to seafood in the workplace at all during these months.

## B.   <u>Defendant Reiterates its Objections to the Following Exhibits</u>

### 1.   **Defendant Objects to Exhibit C**

Bergeron attaches as Exhibit C to her Opposition to Defendant's Motion for Summary Judgment an email, which purports to be email correspondence directed to Marie Lambert's attention (Rec. Doc. 35-5). This document was not authenticated during Lambert's deposition, nor was there any attempt to authenticate it for purposes of Plaintiff's Opposition to Defendant's Motion for Summary Judgment. Therefore, this document, attached as Exhibit C to Plaintiff's Opposition, should not be considered in deciding Defendant's Motion for Summary Judgment.

### 2.   **Defendant Objects to Exhibit G**

Bergeron submitted "audio files with an accompanied excerpt transcription" as Exhibit G to her Opposition to Defendant's Motion for Summary Judgment. "It is well-settled that "[t]o be

10

admissible [as summary judgment evidence], documents must be authenticated by and attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *In re Directech Sw., Inc.*, 2009 WL 10663104, at *3 (quoting 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2722, at 59-60 (2d ed. 1983)). Here, Bergeron included a "Notice of Manual Attachment" (Rec. Doc. 35-9) but made no attempt to authenticate either the recording or transcript via an affidavit or otherwise. As a result, there is nothing establishing the reliability of this purported evidence. There is nothing in the record confirming that the recording was not altered, modified, or excerpted. Additionally, the "transcript" pp. 3-11 of Rec. Doc. 35-9, does not provide any indication as to who prepared the document, when it was prepared, or how it was prepared, nor is there an affidavit attesting to its accuracy. Notably, this "transcript" document was not previously provided to Defendant either in this excerpted form or in any complete form. The entirety of Exhibit G should be stricken from the record. Should the Court consider Exhibit G, it should be noted that neither the inadmissible, excerpted transcript nor the audio recording support Plaintiff's position that she complained about a hostile work environment because of her allergy.

### 3.      Defendant Objects to Exhibit Q

Bergeron attached the Declaration of Toby Savoie as Exhibit Q to her Opposition to Defendant's Motion for Summary Judgment (Rec. Doc. 35-18). For testimony from an affidavit or declaration to be admissible for summary judgment purposes, it must: (1) be based on personal knowledge, (2) set out facts that would be admissible in evidence, and (3) show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Exhibit Q fails to satisfy these requirements. This declaration states that Savoie "witnessed

11

Icesiss Guy make negative comments about Myrell Bergeron because of her seafood restrictions"
but contains no details regarding what the comments allegedly were, when they were made, or in
what context.  The declaration also states that Savoie "witnessed Icessis Guy's annoyance for
Myrell Bergeron's seafood accommodations." This statement is nonsensical but is also not
supported by anything specific that Savoie allegedly witnessed that led her to conclude that Guy
was annoyed at all or that any such annoyance was "for . . . Bergeron's seafood
accommodations."  Such statements lack the requisite demonstration of personal knowledge or
specificity to constitute anything more than "[u]nsubstantiated assertions, improbable inferences,
and unsupported speculation [which] are not competent summary judgment evidence." *Walker v.
SBC Servs., Inc.*, 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005). Any statements that violate the
rule[s] may "not [be] considered for summary judgment purposes." *Floyd v. Chilly's L.L.C. of
Alabama*, No. CV 15-00544-BAJ-RLB, 2017 WL 1455024, at *3 (M.D. La. Apr. 21, 2017).


                          Respectfully submitted,

                          **BAKER, DONELSON, BEARMAN,
                          CALDWELL & BERKOWITZ, PC**


                          BY:   */s/ Christine M. White*
                                Christine Marie White (#28804)
                                Emily Olivier Kesler (#37747
                                201 St. Charles Avenue, Suite 3600
                                New Orleans, LA  70170
                                Telephone:  (504) 566-8634
                                Facsimile:  (504) 636-3975
                                Email: cmwhite@bakerdonelson.com


                          **COUNSEL FOR LCMC URGENT CARE, LLC**


                                      12

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of April 2022 the foregoing document was served on all counsel of record by causing a copy of same to be electronically filed with the Clerk of Court using the CM/ECF system and/or by U.S. Mail and Email.

_s/ Christine M. White_
CHRISTINE M. WHITE

EOK 4866-0203-9317
2918140-000481