UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MYRELL BERGERON | CIVIL ACTION |
| Plaintiff, | No.: 2:21-CV-507 |
| v. | |
| LCMC | JUDGE NANNETTE JOLIVETTE BROWN |
| Defendant. | MAGISTRATE KAREN WELLS ROBY |

**JOINT PROPOSED PRE-TRIAL ORDER**

**MAY IT PLEASE THE COURT:**

The parties having conferred among themselves and with the Court pursuant to Federal Rule of Civil Procedure 16, and pursuant to the Pre-Trial Notice issued by the Honorable Nannette Jolivette Brown, the following statements, directions and agreements are adopted as the Pre-Trial Order in this case.

**1.    Pre-Trial Conference Date**

The Pre-Trial Conference is scheduled for April 19, 2020 at 2:00 p.m.

**2.    Appearance of Trial Counsel for the Parties**

Jessica Vasquez, Esq.
Vasquez Law Office
***Counsel for Myrell Bergeron***
400 Poydras Street, #900
New Orleans, LA 70130
Tel: (504) 571-9582
Fax: (504) 684-1449

Christine M. White
Emily Olivier Kesler
Baker, Donelson, Bearman, Caldwell
& Berkowitz, PC
***Counsel for LCMC Urgent Care, LLC***
201 St. Charles Avenue, Ste. 3600
New Orleans, LA 70170
Tel: (504) 566-8634
Fax: (504) 636-3975

**-and-**

LAW OFFICE OF WOLFF & WOLFF
Charlsey Wolff, Esq.
***Counsel for Myrell Bergeron***
2800 Veterans Memorial Blvd. Ste. 204
New Orleans, LA 70002
Tel: (504) 483-3406
Fax: (504) 229-7702
Email: charlsey@wolffatlaw.com

3.    **Description of the Parties**

Plaintiff Myrell Bergeron ("Plaintiff") is a former employee of Premier Health Consultants LLC, part owner of LCMC Urgent Care, LLC, ("LCMC" or "Defendant"). Premier owns and/or operates various urgent care centers in Louisiana and across the United States. Plaintiff was employed by Premier as a Medical Assistant from February 20, 2019 until her termination on April 22, 2020.

4.    **Jurisdictional Basis of Each Claim**

Plaintiff states the jurisdictional basis of each of her claims as follows:

- This is a lawsuit based upon Federal Question claims asserted under the Americans with Disabilities Act of 1990 ("ADA").

- The lawsuit also asserts supplemental jurisdiction under 28 U.S.C. §1367 for claims under the Louisiana Employment Discrimination Act; La. R.S. 23:323(B)(1)(2); the Louisiana Civil Rights for Handicapped Persons Act La. R.S. 46:2551 and Louisiana Civil Code Article 2315.

5.   **Motions Pending or Contemplated**

Defendant filed a motion for summary judgment on March 22, 2022 (Docket No. 32) seeking the dismissal of Plaintiff's claims in their entirety. No other pre-trial motions are currently pending. The parties anticipate filing motions *in limine* by the May 5, 2022 deadline.

6.   **Joint Summary of Material Facts**

Myrell Bergeron ("Bergeron") signed an employment offer with "LCMC Health Urgent Care ("Premier Health")" on February 20, 2019. Bergeron has an allergy to shellfish.   On September 13, 2019, Bergeron had an allergic reaction from wiping down a table on which sushi had been eaten by a doctor and other urgent care employees.  Bergeron did not report her reaction to anyone at work at that time.  Beginning at 5:50 p.m. on September 16, 2019, Bergeron sent a series of texts to Regional Administrator, Nannette Young, discussing her seafood allergy. Bergeron also submitted an Employee Reporting Complaint Concern form to Defendant which stated, among other things, that she did not report the exposure - just treated herself and moved on, that she did not want to report any incident at all, and that she had asked employees not to eat seafood while she was in the clinic.

At 6:47 p.m. that same evening, Young reached out to HR to seek advice on how to handle the situation, address the staff and inquire as to whether Bergeron was to present a note stating her allergy. Young investigated the incident and completed an incident report and sent it to Employee Health Coordinator Marie Lambert on September 19, 2019.  On September 18, 2019, Lambert, had emailed Bergeron letting her know that the company had been notified of her need for an accommodation beginning on September 13, 2019, and requested additional information including a completed certification form from her healthcare provider.  Defendant had received a note from Dr. Borgman dated September 16, 2019 which indicated that "Ms. Bergeron should not be in

contact with seafood as she is highly allergic" and "She has a well-established history of seafood allergy that causes scratchy throat, itching and hives in the presence of seafood."   Lambert explained to Bergeron that more detailed information was needed from her doctor as to the type of "contact" she was to avoid.

On September 25, 2019, Plaintiff's doctor returned the form and answered "No" in response to the question: "Does the employee have a physical or mental impairment?" The form also asked: "What limitations are interfering with job performance and how do they affect the employee's ability to perform the job functions?" The doctor responded: "Patient is allergic to seafood, highly allergic causing anaphylaxis." And also, "What adjustments to the work environment or position responsibilities would enable the employee to perform the essential functions of that position" and the doctor responded: "Patient cannot be around nor come in contact with seafood."

Bergeron worked over twelve hours on September 13, 2019, over nine hours on September 14, 2019, and shifts of varying lengths on September 17 through September 20, 2019, and on September 25, 2019.  Bergeron did not work from September 26, 2019 through October 28, 2019. On October 23, 2019, Defendant implemented accommodations requiring signs stating "SEAFOOD PRESENT" be placed in all clinics in which Bergeron worked, putting additional cleaning protocols in place, and requiring food containers that contained seafood to be sealed.

 On January 15, 2020, Bergeron had an allergic reaction that she believes was from exposure to crawfish bisque that had been eaten on an earlier shift before Bergeron's shift. Bergeron asked Regional Administrator Pam Ballard, who had replaced Nanette Young in that role, "Can you please ask them on the days I have to work not to bring seafood in I have hives and itching I have taken my meds. I know it's hard to understand but it's not them I hate to be mean

but I don't want to end up like before Thank you Myrell." Ballard agreed to speak with the staff as requested and filled out an incident report.

Bergeron alleges that on January 20, 2020, she advised Pam Ballard that she had asthma since the seafood exposure, that she kept working "last time" sick for fear of losing her job, and that she could not work because she had fever and cough.

Bergeron asserts that on January 29, 2020,  she requested a transfer to the Gretna clinic in order to move away from the individuals who were eating seafood but the request was denied. Defendant contends that Bergeron sent an email to Ballard inquiring about a posting for an opening for a medical assistant in the Gretna clinic and that Ballard responded that Bergeron need only say she was interested. Defendant further contends that Bergeron did not premise any alleged request for a transfer to Gretna on moving away from individuals eating seafood.  Further, Bergeron takes the position that throughout the month of February, 2020 she sent various emails complaining about seafood being allowed by her supervisor Icesiss Guy and that eating seafood by staff was intentional and a recurring pattern. Defendant contends the emails Bergeron sent in late February 2020 to Ballard and Lambert related her request not to work Fridays during Lent so that staff could eat seafood and honor their religious beliefs.  In 2020, Lent ran from February 26 to April 9.

Bergeron alleges she reported and was subjected to more seafood exposure incidents between October 23, 2019 and the date of her termination on April 22, 2020 which she sought medical treatment for. Defendant alleges that no specific "seafood exposure incidents" were reported to Defendant other than in September 2019 and January 2020.  Lastly, Bergeron also alleges that she complained about discriminatory animus as a result of her seafood allergy with respect to her supervisor Icesiss Guy. Defendant denies this unsupported allegation and contends that Bergeron's complaints about Guy related to her being aggressive and needing management training, among other things unrelated to her allergy. On March 17, 2020, Bergeron requested that

she work opposite shifts from Guy. Ballard denied Bergeron's request not to work with her supervisor.

On April 22, 2020, Bergeron's employment was terminated for taking N-95 masks for her personal use in violation of company policy which Bergeron alleges was retaliatory under a Cat's Paw theory.  Defendant contends there was no retaliation under any theory and that HR and management conducted an independent investigation, including reviewing surveillance video, and made the decision to terminate Bergeron's employment independently.

**7.**   **<u>Single Listing of Uncontested Material Facts</u>**

The parties jointly provide the following single listing of uncontested material facts for purposes of trial.

1.     Plaintiff accepted an offer of employment as a Medical Assistant from "LCMC Health Urgent Care ("Premier Health")" on February 20, 2019 and was terminated on April 22, 2020.

2.     Plaintiff was qualified to be offered the job of Medical Assistant.

3.     LCMC received a doctor's note from Dr. Borgman on or about September 16, 2019 stating  "Myrell Bergeon … is a patient with our clinic. She has a well-established history of seafood allergy that causes scratchy throat, itching and hives in the presence of seafood. Ms. Bergeron should not be in contact with seafood as she is highly allergic."

4.      On October 23, 2019, Young forwarded an email to Site Leads and Staff of all clinics in her market in which the human resources department set forth the parameters of the safety protocol to be followed to ensure a safe work environment for Bergeron.  The protocols included: limiting seafood exposure during shifts in which Bergeron was working; closing doors to breakrooms where seafood was eaten and placing a sign that read "Seafood Present"; requiring food containers containing seafood be stored in closed containers; and keeping eating areas

including microwaves clean and wiping down areas with Saniwipes whenever seafood was present.

5.      On March 17, 2020, Plaintiff requested to work opposite shifts from her supervisor Icesiss Guy which was denied by Pam Ballard.

6.      Plaintiff knew in March 2020 that there was a shortage on all personal protective equipment at that time, including N-95 masks, and that healthcare professionals could not get N95 masks in some instances.

7.      Masks are kept in the clinic and if she needed one, she could just go to where the masks were kept and get one and if she felt as if it was too soiled then she could simply get herself another one.

8.      Premier Health employs over 500 employees.

9.      Defendant is a "covered entity" and plaintiff is defendant's "employee"  as defined under the definitions of the ADA.

10.      On February 7, 2019, LCMC Urgent Care, LLC, and Algiers Urgent Care, LLC, and its two physician owners entered into an asset purchase agreement for LCMC Urgent Care, LLC to purchase the clinics owned by the physicians, which clinics were located on the Westbank.

11.      LCMC Urgent Care, LLC is a joint venture jointly owned by Premier and Crescent City Physicians, Inc., which joint venture was formed for the purpose of establishing, developing, owning, managing and operating a network of urgent care clinics.

12.      LCMC Urgent Care, LLC does not have any employees.   Premier employs those who work at the clinics purchased by LCMC Urgent Care, LLC.

13.      On February 17, 2019, Premier offered Myrell Bergeron a position as a Medical Assistant to continue to work in the urgent care clinics she had worked in prior to the acquisition.

14.     At the time of Bergeron's hire, Sarah Laiche was Premier's Vice President of Human Resources and Jaime Malveaux was the Director of Human Resources.

15.     Nanette Young was Premier's Regional Administrator when Bergeron was hired and was responsible for several clinics within a certain market which market included the clinics at which Bergeron worked.

16.     Marie Lambert was the Employee Health Coordinator at the time of Bergeron's hire and remains in that position to date.

17.     The disclosure of her allergy was included on a Louisiana Second Injury Board form that Louisiana employees are required to fill out regarding prior workers' compensation injuries.

18.     Young  required Bergeron to complete an Employee Reporting Complaint Concern form wherein Bergeron described the incident in her own words.   Therein Bergeron acknowledged that she did not immediately report the incident and did not "want to report any incident at all." Instead, she "just treated herself and moved on."

19.     Young conducted an investigation of the September 13, 2019 incident, which included interviewing other employees who had been present in the clinic that day, all of whom confirmed that they had eaten sushi and, though Bergeron had complained that their food smelled like catfood or "stunk", she did not inform them that she was allergic to the smell nor did she notify them that she was having an allergic reaction that required her to self-medicate.   All employees, including the physician on duty, Dr. Long Nguyen, confirmed that at no point did Bergeron appear to be in distress.

20.     Bergeron worked the week following the September 13 incident before going out on leave for approximately one month.   No additional exposures were documented or disclosed to Premier at that time.

21.     On September 17, 2019, Lambert provided Bergeron with paperwork for her health care provider to complete regarding her seafood allergy.

22.     Bergeron's health care provider further confirmed that this was not a new allergy, but rather something Bergeron had been diagnosed with over 30 years prior, and there had been no change in her condition.

23.     On October 23, 2019, Young forwarded an email to Site Leads and Staff of all clinics in her market in which the human resources department set forth the parameters of the safety protocol to be followed to ensure a safe work environment for Bergeron.   The protocols included: limiting seafood exposure during shifts in which Bergeron was working; closing doors to breakrooms where seafood was eaten and placing a sign that read "Seafood Present"; requiring food containers containing seafood be stored in closed containers; and keeping eating areas including microwaves clean and wiping down areas with Saniwipes whenever seafood was present.

24.     In mid-November 2019, Pamela Ballard replaced Young as the Regional Administrator responsible for the clinics at which Bergeron worked.

25.     Bergeron worked the rest of the week of January 15, 2020.   Five days later, on January 20, 2020, Bergeron was treated for bronchitis, at which time any redness of her hands from the January 15 exposure had resolved.

26.     In February 2020, Nick Millet replaced Malveaux as the Director of Human Resources.

27.     In March 2020, Defendant's employees were advised that due to the COVID-19 pandemic they were in a "CDC crisis capacity situation," as a result of which, certain additional procedures would need to be put in place.   Employees were notified that the supply of N-95 masks was limited, so such masks were only to be utilized in limited circumstances and were not to be thrown away.

28.     Bergeron knew there was a shortage on all personal protective equipment at that time, including N-95 masks, and that health care professionals could not get N95 masks in some instances.

29.     Guy reported the April 7, 2020 incident with the masks to Ballard.  Ballard and Millet initiated an investigation, which included securing and reviewing video footage from the clinic's security cameras for April 7, 2020.   Additionally, Millet and Ballard met with Guy who explained that she saw Bergeron search though some drawers and then remove the missing masks from her handbag, declaring that she "found" the missing masks.

30.     On April 22, 2020, Ballard, Millet, and Center Manager DiBenedetto met with Bergeron to give her the opportunity to explain what appeared to be her taking the N-95 masks for her personal use in violation of company policy, and Bergeron disclaimed remembering putting them in her handbag.

31.     Bergeron said she did not remember putting the masks in her bag during the termination meeting.

32.     Premier terminated Bergeron's employment on April 22, 2020 for taking the N-95 masks for her personal use which constitutes theft under Premier's Handbook.

33.     In January 2021, Jared LeDoux replaced Laiche as the Vice President of Human Resources.

**8.     Single Listing of Contested Issues of Fact[1]**

The parties jointly provide the following single listing of contested issues of fact for purposes of trial.

---

1 Defendant contends that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law but joins in this listing in accordance with the Court's Pretrial Notice.

1.      Whether Plaintiff's medical certification stating that she could not be in contact or around seafood included prohibiting seafood odor.

2.      Whether Defendant engaged in the interactive process with Plaintiff after September 16, 2019 and before October 23, 2019.

3.      Whether Defendant engaged in the interactive process after October 23, 2019 with the Plaintiff.

4.      Whether the accommodations, granted by Defendant, allowed employees to eat seafood while the Plaintiff was working subject to the protocols listed in the October 23, 2019 email.

5.      Whether the "SEAFOOD PRESENT" sign was always up even if seafood was not present.

6.      Whether there were tools in place to monitor if the staff was complying with the accommodations listed in the October 23, 2019 email.

7.      Whether Plaintiff requested a transfer away from the Marrero clinic due to avoid seafood exposure on January 29, 2020.

8.      Whether the seafood allergy was open and obvious.

9.      Whether Icesiss Guy continued to eat seafood on days that Plaintiff would work even though she was aware of the severity of the allergy.

10.     Whether Icesiss Guy intentionally permitted staff to eat seafood on the days Plaintiff would work even though she was aware Plaintiff was allergic.

11.     Whether Icesiss Guy intentionally ate seafood on the days Plaintiff would work even though she was aware Plaintiff was allergic.

12.     Whether Icesiss Guy or any other employee touched Plaintiff with shellfish or caused her to touch shellfish.

13.     Whether Icesiss Guy or any other employee intended to cause Plaintiff physical harm by eating shellfish.

14.     Whether Plaintiff engaged in protected activity and complained about being harassed over her seafood allergy by Icesiss Guy.

15.     Whether Plaintiff engaged in protected activity when she complained about how Icesiss Guy was treating her because of her seafood allergy.

16.     Whether Plaintiff engaged in protected activity when she complained that the seafood being eaten while she worked was a recurrent pattern.

17.     Whether Icesiss Guy made negative comments about Plaintiff because of her seafood restrictions.

18.     Whether Plaintiff requested a meeting with HR Director Nick Millet where she complained about a hostile work environment caused by her supervisor, Icesiss Guy who harassed because she had made complaints about seafood being eaten during her shift.

19.     Whether Plaintiff made a request to the HR Director for opposite shifts from Icesiss Guy to avoid seafood exposure and seafood related harassment on March 17, 2020.

20.     Whether Plaintiff had seafood exposures and self-medicated on April 2, 2020 and April 3, 2020.

21.     Whether Plaintiff was coughing up blood due to her seafood allergy and related complications in April, 2020.

22.     Whether the masks taken and later returned by the Plaintiff constituted theft under LCMC policy which prohibits the "personal use" of supplies.

23.     Whether the "behaviors" in both actions and words noted by Icesiss Guy were sufficient to support her allegation that Plaintiff "stole" masks.

24.     Whether the videos displayed "behaviors" that indicate Plaintiff was going to use the masks for "personal use" in violation of LCMC policy.

25.     Whether the HR Director who terminated Plaintiff had information from Icesiss Guy that Plaintiff was going to use the mask for personal use.

26.     Whether the HR Director who terminated Plaintiff relied on information given to him by Icesiss Guy, the supervisor Plaintiff complained about.

27.     Whether after reviewing the video at the deposition, the HR Director would not have labeled the actions as "theft."

28.     Whether the HR Director was informed by Icesiss Guy that the masks were actually returned by Plaintiff within minutes of being asked for them.

29.     Whether Plaintiff would have continued to work at LCMC for three years into the future.

30.     Whether Plaintiff suffered from asthma, edema, elevated white blood count and elevated high blood pressure as a result of the seafood exposure at LCMC.

31.     Whether Plaintiff developed chronic obstructive pulmonary disease as a result of the multiple seafood exposures at LCMC.

32.     Whether Plaintiff is entitled to future medicals for a required annual pulmonary function test in the amount of $26,686.

33.     Whether specials should be granted for backpay in the amount of $34,023.

34.     Whether specials should be granted for three years of front pay in the amount of $120,000.

35.     Whether Plaintiff is entitled to an award of compensatory damages as a result of suffering from anxiety disorder, acute anxiety disorder, mental anguish and emotional distress as a result of the discriminatory work environment.

36.     Whether Premier Health Consultants, L.L.C. ("Premier") is a leader in health system branded urgent care joint-ventures and operates urgent care networks in partnership with some of the top health systems and hospitals in the country.   Premier forms equity joint-ventures or management-only partnerships with such systems and hospitals and serves as the owner-operator of urgent care and occupational health centers.

37.     Whether Katherine DiBenedetto was a Center Manager at the time Bergeron was hired in 2019 and at the time of her termination in April 2020 and was responsible for certain clinics at which Bergeron worked.

38.     Whether at or around the time of her onboarding with Premier, Bergeron disclosed that she had an allergy, which was controlled by medication.

39.     Whether Bergeron did not further expand on any specific limitations related to her allergy or otherwise request accommodation from Premier at that time.

40.     Whether in March 2019, Bergeron attended a training in the Algiers clinic during which several co-workers ordered lunch items containing seafood.

41.     Whether Bergeron had no apparent reaction to being around the seafood, but was self-medicating. Bergeron did not provide any medical documentation related to this training event; she did not miss any work immediately following this exposure;   nor did she request accommodation at this time.

42.     Whether on Friday, September 13, 2019, Bergeron voluntarily wiped down a table in the break area that she admitted she knew had come into contact with sushi, thereby triggering an allergic reaction.

43.     Whether Bergeron self-medicated by using her EPI pen.   She continued to work a full day of work that day, without reporting any issues to Defendant.

44.     Whether sometime in October 2019, Bergeron met with Young and Malveaux to discuss accommodations for her allergy and proposed increasing cleaning procedures to ensure that everything in the breakroom would be kept clean and wiped down after each use and requiring that a "Seafood Present" sign be displayed to warn Bergeron on occasions where seafood was or had been present in the building; Bergeron was consulted and agreed with this proposal at the time. Malveaux and Young further advised Bergeron that she should let them know if there were any subsequent issues with the accommodation once implemented.

45.     Whether on January 15, 2020, one of the doctors in the clinic treated his team to a lunch, which included corn and crawfish bisque.   Bergeron was not working when the staff had their lunch, but was scheduled to work that afternoon at 2:00 p.m.  Upon realizing that Bergeron would be coming in, the staff cleaned up the conference room where they had eaten, collected and swapped out the trash cans that had been used, wiped down all surfaces that had come into contact with the seafood, and hung the "SEAFOOD PRESENT" sign in the appropriate place. Additionally, Bergeron was notified verbally upon her arrival to the clinic that seafood had been eaten earlier and she should avoid the conference room where the employees had eaten.

46.     Whether at the end of her shift on January 15, 2020, Bergeron texted Ballard to let her know that she had hives and her hands were itching.   Bergeron requested that Ballard ask employees refrain from bringing seafood on the days she worked.   Ballard told Bergeron that she

would speak to the staff and advised the staff that they should not have seafood in the clinics when Bergeron was scheduled to work.

47.     Whether Bergeron did not report any subsequent allergic reactions or the need for medical attention related thereto at any point following the January 2020 incident.

48.     Whether on April 7, 2020, recently promoted Center Manager Icesiss Guy noticed that a package of N 95 masks was missing from a shipment the Marrero clinic had just received. Guy witnessed Bergeron removing the missing masks from her personal bag after having assisted with looking for the missing masks.

49.     Whether Bergeron's health care provider completed and returned the paperwork to Premier on September  25, 2019, responding "No" to the question "Does the employee have a physical or mental impairment[,]" but also indicating that Bergeron could not "be around nor come in contact with seafood."

50.     Whether Plaintiff had a disability, namely a seafood allergy.

51.     Whether In the Louisiana Second Injury Board form signed by the Employee Health Benefits Coordinator, Marie Lambert, on February 22, 2019, Plaintiff was asked: "Have you ever had  an on the job injury?" Plaintiff checked "Yes". And when asked "If you answered "Yes" please provide the date for each injury and the nature of the injury" she wrote " Yes Allergy Reaction To Shrimp".

52.      Whether Nannette Young, Regional Administrator, recalls a training that occurred upon the purchase of Algiers Urgent Care in February, 2019 wherein she became aware of the Plaintiff's shellfish allergy. Ms. Young was ordering food for staff during a training session and Plaintiff advised her that she had an allergy to shrimp.

53.     Whether Young asked Bergeron if she was going to have problems with them eating shellfish there and Bergeron said no, as long as she did not eat it she was fine.

16

54.     On September 16, 2019, Plaintiff sent a text to Nannette Young, stating "May I ask you a favor can you please have employees not eat seafood on the days I work with them I had a reaction on Friday and had to use my epi I hate to be a pain but I saw my doctor today and he said I am dealing with the inflammation of the reaction. I am severely allergic to shellfish I am healthy other than allergic to shellfish and had physical labels perfect He gave me a note to give you…healthy as a horses But can't be around seafood. Thanks Myrell." . Sorry to be a pain Are maybe they can close the door and wash their hands not eat it at desk M. I have to  carry epi With me at all times per Dr Borgman if that's ok? M" Young asked who ate at their desk and Bergeron responded: "We all eat at desk At times. Katie on a diet so she eats shrimp. But the shellfish is a killer to me Maybe I could ask no seafood as s favor to me I am working tomorrow 2/8 will e mail u note Dr. Borgman wrote.

55.     Whether on September 18, 2019, LCMC confirmed receipt of the doctor's note and requested a "ADA Provider Certification" to be completed by Plaintiff's physician.

56.     Whether on September 25, 2019, the form was returned by Plaintiff's doctor specifically stating that Bergeron could not be in contact or around shellfish and that she was highly allergic, anaphylaxis.

57.     Whether the September 25, 2019, form from Bergeron's doctor indicated that Bergeron does not have a physical or mental impairment; that she is highly allergic to seafood, and cannot be around nor come into contact with seafood; that no adjustments to her work schedule are needed; that she would not need Epi if there is no contact with seafood.

58.     Whether on October 21, 2019, LCMC sent Plaintiff to Dr. Swift, in the course of the worker's compensation claim and he treated Plaintiff and noted her restrictions as " No exposure to seafood including heating or cooking of seafood. Please refer to Dr. Borgman's notes."

59.     Whether on January 15, 2020, LCMC employees ordered corn and crawfish bisque which arrived at 1pm. Bergeron was scheduled to work at 2:00 p.m.  At the end of her shift Bergeron texted Pam Ballard to let her know that she had hives and her hands were red and itching and requested that Ballard ask employees to refrain from bringing seafood on the days she worked.

60.     Whether Plaintiff was sent to Dr. Steen at the request of LCMC's worker's compensation carrier for the January 15, 2020 seafood exposure incident and the medical records note that there were two other episodes over the last several months.

61.     Whether on January 20, 2020, Plaintiff was sent by LCMC to Pelican State Outpatient Center as a result of the worker's compensation seafood allergy injury. LCMC received a work status report indicating that Plaintiff "must work in seafood free environment."

62.     Whether Plaintiff requested a transfer from the Marrero clinic to the Gretna clinic on January 29, 2020 which was denied.

63.     Whether Plaintiff wrote an email to Marie Lambert on February 5, 2020, after two severe seafood exposures incidents, complaining that the staff was bringing in seafood during her shift when they know she was allergic and stating that she feels the staff is trying to get rid of her.

64.     Whether on February 6, 2020, Plaintiff asked Marie Lambert for an appointment to speak to human resource.

65.     Whether on February 21, 2020, Plaintiff reported to Jennifer Banham, the Medical Case Manager handling the worker's compensation case that she had another seafood exposure incident that day.  Ms. Banham sent an email to Marie Lambert, the Employee Health Coordinator, reporting the incident.

66.     Whether Plaintiff wrote an email on February 22, 2020 indicating that seafood is deadly to her but that her center manager, Icesiss Guy knows this and still allows it when she works and she feels threatened by the behavior.

18

67.     Whether on February 25, 2020, Plaintiff wrote an email complaining about Icesiss Guy being "cold" in reference to seafood eaten in lent and that when she tried to change her schedule, she was told her schedule was already made.

68.     Whether on February 28, 2020, Plaintiff sent an email to Marie Lambert complaining that the eating of seafood was a "recurrent pattern" and that the exposure was causing her medical issues and that she did not want to be around seafood. Plaintiff also requested that she not work on Fridays during lent but was told her March schedule was already made.

69.     Whether on March 13, 2020, Dr. Borgman wrote a letter indicating that Ms. Bergeron was experiencing numerous allergic reactions due to her having a seafood allergy with exposure at work.

70.     Whether the clinics never reached a point where they had zero masks in the clinic and that there was enough to get at least one mask if a mask was dirty and tainted and no one had any grossly dirty mask.

71.     Whether there was no notice on the box with masks that indicated no one could take masks or putting a limit on how many a person could take.

72.     Whether anyone that was bleeding or coughing out blood in their mask are not expected to reuse the masks.

**9.     Single Listing of Contested Issues of Law**

The parties jointly provide the following single listing of contested issues of law for purposes of trial.

1.     Whether a reasonable accommodation existed that would have allowed Plaintiff to perform the essential functions of the job.

2.     Whether Defendant failed to provide a reasonable accommodation under the ADA and LEDL.

3.      Whether Defendant retaliated against Ms. Bergeron for engaging in protected activity, in violation of the ADA.

4.      Whether there is a causal connection between Plaintiff's complaints of various seafood related harassment and her termination on April 22, 2020.

5.      Whether there is a causal connection between Plaintiff's complaints of various seafood related harassment and her termination on April 22, 2020 under a Cat's Paw Theory.

6.      Whether Plaintiff suffered any harm or injury as a result of any alleged conduct sufficient to support a finding of compensatory damages.

7.      Whether Plaintiff sufficiently mitigated her damages after her employment was terminated on April 22, 2020.

8.      Whether, to the extent Plaintiff sufficiently proved liability, Plaintiff sufficiently proved that she suffered damages proximately caused by Defendant's actions or inactions.

9.      Whether Defendant violated the ADA causing damages to Plaintiff.

10.     Whether Defendant violated ADA with malice and/or reckless indifference, such that punitive damages are warranted.

11.     Whether Defendant is liable under La. Civil Code 2315.

12.     Whether Defendant is liable under La. R.S. 23:301 *et seq*.

13.     Whether damages and/or equitable relief are appropriate under the ADA.

14.     Whether Defendant can establish the affirmative defense of failure to mitigate.

15.     Whether Defendant can establish any of the defenses listed in its Answer.

16.     Whether the Court should award the Plaintiff its costs in this action.

17.     Whether the Court should award the Plaintiff attorneys' fees in this action.

18.     Whether all conditions precedent to the filing of this action have been met.

19.     Whether the Court should award pre-judgment and post-judgment interest on Mrs. Bergeron's damages.

20.     Whether the damages cap under 42 U.S.C. § 1981a applies per claim, such that the cap is $300,000 for the ADA and $300,000 for the retaliation claim.

21.     Whether damages are appropriate in this case under the ADA, Louisiana Civil Code Art. 2315, La. R.S. 46:2551 et seq. and La. R.S. 23:301.

22.     Whether Plaintiff has a disability as defined by the ADA or the LEDL.

23.     Whether Plaintiff was terminated or otherwise discriminated against with respect to compensation or the terms, conditions, or privileges of employment on the basis of any disability unrelated to her ability to perform the duties of her position.

24.     Whether Defendant provided an accommodation that was sufficient to meet Bergeron's job-related needs.

25.     Whether any accommodation Plaintiff claims to have sought would have created an undue hardship for Defendant.

26.     Whether Defendant engaged in good faith efforts to engage in the interactive process and to make a reasonable accommodation and is thereby shielded from liability for compensatory and punitive damages. 42 U.S.C. § 1981a(a)(3).

27.     Whether Plaintiff failed to engage in the interactive process.

28.     Whether Plaintiff participated in an activity protected under the ADA.

29.     Whether a denied lateral transfer, if one occurred, constitutes an adverse employment action.

30.     Whether a causal connection exists between any protected activity under the ADA and the Plaintiff's termination or any other allegedly adverse action.

31.     Whether Defendant subjected Plaintiff to a harmful or offensive contact with the intent to cause her to suffer such a contact.

32.     Whether Plaintiff suffered any damages from any such contact.

33.     Whether Plaintiff has been fully compensated for all past and future medical expenses associated with any alleged damage suffered as a result of any alleged harmful contact.

34.     Whether Plaintiff's battery claim is prescribed.

35.     Whether Plaintiff has sufficiently plead a claim under the Louisiana Civil Rights for Handicapped Persons Act, R.S. 46:2251-56.

36.     Whether Plaintiff was discriminated against by any educational facility, in any real estate transaction, or was excluded from participating in, or denied the benefits of, any program or activity which receives financial assistance from the state or any of its political subdivisions.

37.     Whether any claim Plaintiff may have ever had under the Louisiana Civil Rights for Handicapped Persons Act is prescribed.

**10.    Trial Exhibits**

The parties reserve the right to offer into evidence any and all exhibits identified in the opposing party's list of trial exhibits.

Plaintiff's Exhibit List:

| Ex | BATES | DESCRIPTION | OBJ. Yes/No |
|---|---|---|---|
| 1 | DEF_000364-000365; BERGERON_100-102 | Employment Offer 2/20/2019 | N |
| 2 | DEF_000875-000880 | SIB FORM | Y, 401, 402, 403 |
| 3 | DEF_000274-275, - DEF_000284-000287 | Employee Incident Report 9/13/2019 | No objection to the documents but object to characterization |

| Ex | BATES | DESCRIPTION | OBJ. Yes/No |
|---|---|---|---|
| | | | of 274-274 as incident report |
| 4 | DEF_000844-000847 | Texts to Nanette Young 9/16/2019 | N |
| 5 | DEF_000257-000258 | Email 9/18/2019 | Y, 401, 402, 403 |
| 6 | DEF_000251 | Medical Letter from Borgman 9/16/2019 | N |
| 7 | DEF_000679 | Email fr Lambert to Malveaux 9/17/2019 | N |
| 8 | DEF_000403 | Medical Note 9/18/2019 | Y, 401, 402, 403, 602, 802 |
| 9 | DEF_000379 | Medical Note 9/22/2019 | Y, mischaracterization of document, and 401, 402, 403, 602, 802 |
| 10 | DEF_000396 | ADA Certification Form 9/25/2019 | No objection to document but object to characterization of it |
| 11 | DEF_000398-400 | Medical Record 9/26/2019 | N |
| 12 | DEF_000650-000651, 000654 | Email fr Bergeron to Lambert 9/30/3019 | N |
| 13 | DEF_000647-000648 | Email fr Bergeron to Lambert 9/30/2019 | N |
| 14 | BERGERON_373 | Picture of Bloody Napkin 10/7/2019 | Y, 401, 402, 403, 901 |
| 15 | DEF_000630-000633, DEF_000270 | Email of medical records 10/14/2019 for 10/11/2019 visit | Y, incomplete, unrelated, 401, 402, 403 |
| 16 | DEF_000406 | Medical Record from Dr. Swift 10/21/2019 | N |
| 17 | BERGERON_387-390 | Letter from Banham to Bergeron 10/21/2019 | N |

| Ex | BATES | DESCRIPTION | OBJ. Yes/No |
|---|---|---|---|
| 18 | DEF_000870-000874 | Accommodations granted 10/23/2019 | N |
| 19 | DEF_000840-000841 | Email to Ballard re self assessment 11/24/2019 | Y, 401, 402, 403 |
| 20 | BERGERON_370 | Photo of Sputum 11/25/2019 | Y, 401, 402, 403, 901 |
| 21 | BERGERON_392-398 | LCMC Medical Records 11/25/2019 | Y, 401, 402, 403 |
| 22 | BERGERON_458 | Photo of Medications 11/27/2019 | Y, 401, 402, 403, 901 |
| 23 | BERGERON_399-411 | LCMC Medical Records- Hospitalization 11/27/19 | Y, 401, 402, 403 |
| 24 | DEF_000843 | Email from Lambert to Young 12/2/2019 | N |
| 25 | BERGERON _371 | Photo of Sputum 12/2/2019 | Y, 401, 402, 403, 901 |
| 26 | BERGERON_412 | Letter from Banham to Dr. Garg 12/19/2019 | Y, 401, 402, 403, 901 |
| 27 | DEF_000839 | Email from Bergeron to Ballard 1/15/2020 | N |
| 28 | DEF_000333-000334 | Employee Incident Report 1/15/2020 | N |
| 29 | BERGERON_375-376 | Pictures of Itching Red Hands 1/15/2020 | Y, 401, 402, 403, 802, 901 and mischaracterization of 376 and picture of "itching" |
| 30 | DEF_000837-000838 | Email between Ballard and Lambert 1/17/2020 | N |
| 31 | DEF_000335-000343 | Work Status Report and Medical Note 1/20/2020 | N |
| 32 | DEF_000344-000363 | Texts to Pam Ballard 1/2020 | N |
| 33 | DEF_000833 | Email fr Lambert re RTW 1/21/2020 | N |

| Ex | BATES | DESCRIPTION | OBJ. Yes/No |
|----|-------|-------------|-------------|
| 34 | DEF_000831-000832 | Email from Lambert re pulmonologist 1/27/2020 | Y, 401, 402, 403 |
| 35 | BERGERON_425 | Email requesting transfer 1/29/2020 | Y, 401, 402, 403 and mischaracterizatio n |
| 36 | DEF_000205-000207 | Emails to Marie Lambert 2/6/2020 | Y, 401, 402, 403, 802 |
| 37 | BERGERON_001-003 | Letter from Dr. MacGregor | N |
| 38 | BERGERON_426 | Email to Lambert fr Jennifer Baham 2/25/2020 | Y, 401, 402, 403, 802 |
| 39 | DEF_000203 | Email to Marie Lambert 2/22/2020 | Y, 401, 402, 403, 802 |
| 40 | DEF_000827-000828 | Email to Ballard re lent season 2/24/2020 | N |
| 41 | DEF_000201 | Email complaint 2/25/2020 | Y but only to characterization of exhibit |
| 42 | DEF_000196; DEF_000682 | Memo re Icesiss Guy 2/26/2020 | Y but only to characterization of exhibit |
| 43 | DEF_000184-000194 | Email and texts re switching shifts 2/28/2020 | N |
| 44 | DEF_000161 | Memo re Plaintiff 2/28/2020 | N |
| 45 | DEF_000181-000182 | Email to Marie Lambert re seafood 2/28/2020 | Y, mischaracterizatio n |
| 46 | DEF_000177-000180 | Email fr Bantham to Marie Lambert 2/28/2020 | Y, 802 |
| 47 | DEF_000163-000170 | Email from Ballard re texts after hours 3/1/2020 | N |
| 48 | DEF_000151-000158 | Email to Lambert re medical note &  key 3/6/2020 | Y, 401, 402, 403 |

| Ex | BATES | DESCRIPTION | OBJ. Yes/No |
|---|---|---|---|
| 49 | DEF_000056 | Medical Note 3/13/2020 | Y, 802, 901 |
| 50 | DEF_000150 | Memo regarding meeting on 3/16/2020 | Y but only as to characterization of document |
| 51 | BERGERON_437 | Audio of March 16, 2020 meeting | Y, 401, 402, 403, 901 |
| 52 | DEF_000149 DEF_000819-820 | Email to Nick Millet re opposite shifts 3/17/2020 | N |
| 53 | BERGERON_377 | Email fr Ballard denying shift change 3/17/2020 | Y, 901 |
| 54 | BERGERON_011-013 | Pictures of bloody masks | Y, 401, 402, 403, 901 |
| 55 | BERGERON_373 | Bloody Cough | Y, 401, 402, 403, 901 |
| 56 | DEF_000146 | Email re video of potential theft 4/7/2020 | Y but only as to characterization |
| 57 | DEF_000408-000451 | Screenshots of Video | N |
| 58 | DEF_000453-000454 | Video of 4/7/2020 | N |
| 59 | DEF_000001 | Memo regarding Missing N95 Masks 4/20/2020 | N |
| 60 | DEF_000002 | Memo regarding Termination 4/22/2020 | N |
| 61 | DEF_000620-000626 | Time and Attendance | N |
| 62 | DEF_000288-000332 | Employee Handbook | N |
| 63 | BERGERON_357 | Diagnosis of COPD | Y, 401, 402, 403, 802, 901 and mischaracterization |
| 64 | DEF_000140-000141 | Script from LCMC Urgent Care LLC 7/9/2020 | Y, 401, 402, 403 |

| Ex | BATES | DESCRIPTION | OBJ. Yes/No |
|---|---|---|---|
| 65 | BERGERON_441-451 | Medical Records from Excelth, Melissa Lalone | Y, 401, 402, 403 |
| 66 | BERGERON_003-010 | Medical Records from Dr. Garg | Y, 401, 402, 403 |
| 67 | BERGERON_365-366,452-457 | W-2s and Income Information | N |
| 68 | DEF_000385-000393 | Payroll Register for Myrell Bergeron | N |
| 69 | DEF_000469 | Right to Sue Letter 1/4/2021 | N |
| 70 | DEF_000509-510 | EEOC Charge | N |

Defendant's Exhibit List:

| EX | BATES | DESCRIPTION | OBJ. Yes/No |
|---|---|---|---|
| 1 | DEF_000452 – DEF_000457 and DEF_000408 – DEF_000451 | Videos and video screenshots | N |
| 2 | DEF_000001 | April 20, 2020 Memorandum regarding Missing N95 Masks | N |
| 3 | DEF_000002 | April 22, 2020 Memorandum regarding Plaintiff's termination | N |
| 4 | DEF_000284 – DEF_000287 | September 2019, Employee Incident Report | N |
| 5 | DEF_000696 – DEF_000697 | September 13, 2019, Employee Reporting Complaint Concern by Plaintiff | N |
| 6 | DEF_000333 – DEF000363 | January 2020, Employee Incident Report | N |
| 7 | DEF_000366 – DEF_000381, DEF_000405, DEF_000695 | Documents related Plaintiff's September medical treatments | N |
| 8 | DEF_000396 | September 25, 2019, Reasonable Accommodation Request Physician Form | N |
| 9 | BERGERON_110 | September 18, 2019, Correspondence re: Request for ADA Accommodation | N |
| 10 | DEF_000403 | September 18, 2019, Doctor's Excuse | N |

| EX | BATES | DESCRIPTION | OBJ. Yes/No |
|---|---|---|---|
| 11 | DEF_000397 – DEF_000400 | September 26, 2019, Return to Work Release | N |
| 12 | DEF_000405 | October 4, 2019, Doctor's Excuse | N |
| 13 | DEF_000406 | October 21, 2019, Return to Work Release | N |
| 14 | DEF_000140 – DEF_000281, DEF_000401 – DEF_000402, DEF_000628 – DEF_000680, DEF_000688 – DEF_000690, and DEF_000700 – DEF_000703 | Correspondence from 2019 and 2020 from, to, or regarding Plaintiff | Y, 402/403, 602 re DEF_000645, 000672, 000674, 000681, 000700-000703 |
| 15 | DEF_000682 | February 26, 2020 Memorandum, Employee Relations file of Myrell Bergeron | N |
| 16 | DEF_000288 – DEF_000332 | Employee Handbook | N |
| 17 | BERGERON_100 – BERGERON_102 | Medical Assistant job description | N |
| 18 | DEF_000458 – DEF_000468 | Plaintiff's medical records | N |
| 19 | DEF_000595 – DEF_000608, DEF_000617 – DEF_000618 | Plaintiff's personnel records | Y, 402/403, 801 re DEF_000595-000608, 000610-000612, 000617-000618, 000619 |
| 20 | DEF_000364 – DEF_000365 | February 20, 2019, Employment Offer to Plaintiff | N |
| 21 | DEF_000620 – DEF_000626 | Plaintiff's time & attendance records | N |
| 22 | DEF_000750 – DEF_000751 | Notice of Unemployment Claim | Y, 402/403 |
| 23 | DEF_000407 | Plaintiff's Separation Notice | N |
| 24 | DEF_000383 – DEF_000384 | Plaintiff's Litmos Achievements | N |
| 25 | DEF_000762 – DEF_000810 | Plaintiff's employment records, post-termination from Defendant | Y, 402/403 DEF_000810 |
| 26 | BERGERON_243 – BERGERON_248 | Documents related to Plaintiff's reemployment efforts | N |

| EX | BATES | DESCRIPTION | OBJ. Yes/No |
|----|-------|-------------|-------------|
| 27 | DEF_000003-DEF_000129; 000469-DEF000591 | EEOC FOIA Response | Y, 402/403 |
| 28 | DEF_000131-DEF00134 | Bergeron Application | N |
| 29 | DEF_000382 | Acknowledgment | N |
| 30 | DEF_000401-000402 | Texting outside of normal business hours | N |
| 31 | DEF_000821-000847 | Correspondence between Ballard and Bergeron | N |
| 32 | DEF_000848-000869 | January 15, 2020 Incident Report with attachments | N |

**11.** **Proposed Deposition Testimony Designations**

    **A.** **Plaintiff's Deposition Testimony Designations**

Plaintiff does not currently anticipate calling any witnesses through deposition testimony. Plaintiff reserves the right, however, to use deposition testimony for impeachment or other appropriate purposes.

    **B.** **Defendant's Cross-Designations**

        Not applicable.

    **C.** **Defendant's Deposition Testimony Designations**

Defendant does not currently anticipate calling any witnesses through deposition testimony. Defendant reserves the right to use deposition testimony for impeachment or any other appropriate purposes.

    **D.** **Plaintiff's Cross-Designations**

        Not applicable.

**12.**     **Charts/Graphs/Models/Schematic Diagrams for Opening/Closing Statements**

The parties do not currently anticipate using any charts, graphs, models, schematic diagrams or similar objects in opening statements or closing arguments.

The parties may project enlarged versions of exhibits, including audio or video and/or other demonstrative exhibits to the Jury.  Plaintiff may use blow-ups of Exhibits and an enlarged blow up of a spreadsheet with damage calculations or other demonstrative aids. The parties will provide all demonstratives per the Pre-Trial Order.

**13.**     **Trial Witnesses**

    **A.**     **Plaintiff's Witnesses**

**Witnesses:**

1. **Myrell Bergeron:** to be contacted through undersigned counsel; expected to testify as to all claims in the Petition and Amended Petition.

2. **Warren Bergeron:** to be contacted through undersigned counsel; expected to testify as to the audio recording of the meeting with Nick Millet and Pam Ballard, interactions with Plaintiff's co-workers, and Plaintiff's damages as a result of seafood exposure.

3. **Jennifer Baham, RN:** Genex Services, LLC, 3636 S. I-10 Road, Ste. 308, Metairie, LA – expected to testify as to notice given to Defendant relative to Plaintiff's seafood allergy and the diagnosis and/or treatment she witnessed during Plaintiff's doctor visits related to seafood exposure claims.

4. **Pam Ballard:** through defense counsel-expected to testify regarding accommodations, knowledge of medical condition of Plaintiff and incidents of seafood exposure.

5. **Dr. Theodore J. Borgman:** Internal Medicine at Crescent City Physicians 3434 Prytania St. New Orleans, LA 70115-expected to testify as to Plaintiff's restrictions with respect to

the seafood allergy, treatment, and diagnosis of conditions related to seafood exposure as well as incidents of exposure.

6. **Dr. Om Garg**: 3600 Prytania St #65, New Orleans, LA 70115- expected to testify relative to Plaintiff's restrictions relative to her seafood allergy, treatment, and diagnosis of conditions related to seafood exposures as well as incidents of exposure.

7. **Dr. Sherri Godbey**: Excelth Primary Healthcare 4422 General Meyer Ave Apt. 103, New Orleans, LA 70131- expected to testify regarding treatment and diagnosis relative to mental distress and emotional damages as a result of work environment with Defendant.

8. **Rebecca Kerner**: 2174 Jean Lafitte Blvd, Lafitte, LA (504) 247-6807- expected to testify relative to statements made by Icesiss Guy regarding Plaintiff's seafood allergy, the accommodations in place by Defendant, and knowledge regarding the Gretna clinic.

9. **Marie Lambert**: through defense counsel- expected to testify regarding her knowledge of complaints of seafood exposure, complaints regarding Icesiss Guy, knowledge of medical condition of Plaintiff, and accommodations.

10. **Melissa Lalone:** Excelth Primary Healthcare 4422 General Meyer Ave APT 103, New Orleans, LA 70131- expected to testify regarding treatment and diagnosis relative to mental distress and emotional damages as a result of work environment with Defendant

11. **Wendy Lococo**: 425 36th Street, New Orleans, LA 70124; (504) 220-0655- expected to testify regarding the prohibition of seafood during Plaintiff's employment with Algiers Urgent Care and the knowledge of Plaintiff's seafood allergy by co-workers that became employed with Defendant.

31

12. **Dr. John McGregor**: 1502 W Causeway Approach Ste. D, Mandeville, LA 70471-expected to testify regarding treatment and diagnosis relative to mental distress and emotional damages as a result of work environment with Defendant.

13. **Nick Millet**: through defense counsel- expected to testify regarding knowledge of accommodations, request to transfer, and facts surrounding termination.

14. **Toby Savoie:** 716 Mercedes Road, Terrytown, LA 70056; (985) 710-2976- expected to testify regarding statements made by Icesiss Guy regarding Plaintiff's seafood allergy and work environment including accommodations

15. **Dr. Douglas Swift:** Occupational Health at Ochsner 3530 Houma Blvd #201, Metairie, LA 70006-expected to testify as to Plaintiff's restrictions as to the seafood allergy, treatment and diagnosis of conditions related to seafood exposure and incidents of seafood exposure.

16. **Tarazz Floyd:** (504) 319-7099- expected to testify regarding Icesiss Guy's statements regarding Plaintiff's seafood allergy and accommodations.

17. **Dr. Paula Wilt:** Excelth Primary Healthcare 4422 General Meyer Ave Apt. 103, New Orleans, LA 70131.

18. **Nanette Young**: through defense counsel-expected to testify regarding accommodations, knowledge of medical condition of Plaintiff and incidents of seafood exposure.

19. Any impeachment witnesses and/or individuals necessary for rebuttal.

20. Any person listed, called or sought to be called by any other party.

**Plaintiff's Witness list was filed in accordance with prior court orders**

B.    **Defendant's Witnesses**

1.      Jared LeDoux – expected to testify regarding relationship between Premier Health Consultants, LLC and LCMC Urgent Care, LLC, Premier's business operations, HR policies and practices, and other aspects of corporate knowledge.

2.      Nicholas Millet - 10535 Hillmont Ave, Baton Rouge, LA   70810   expected   to testify regarding meetings with Bergeron, investigations conducted, and the circumstances surrounding the decision to terminate Bergeron's employment.

3.      Jamie Malveaux – 2217 Legion Street, Lake Charles, LA 70601 = expected to testify regarding Bergeron's employment with Premier and the accommodations provided to Bergeron for her allergy.

4.      Pamela Ballard – 219 Elmwood Street, Mandeville, LA,  70448  =  expected  to testify regarding Bergeron's employment with Premier, correspondence related to Bergeron's inquiry regarding open position in Gretna, accommodations provided to Bergeron for her allergy, and the circumstances surrounding the decision to terminate Bergeron's employment.

5.      Marie Lambert – 16098 Bluff Road, Trlr 33, Prairieville, LA. 70769 - expected to testify regarding conversations with Bergeron and the provision of paperwork to Bergeron associated with her request for accommodation for her allergy.

6.      Icesiss Guy – 3816 S Inwood Ave, New Orleans, LA, 70131 - expected to testify regarding Bergeron's employment with Premier, her interactions with Bergeron, the January 2020 crawfish bisque lunch, and the events that transpired on April 7, 2020 related to the PPE shipment received.

7.      Kathryn DiBenedetto – 1725 Louisiana Avenue, New Orleans, LA, 70115 - expected to testify regarding Bergeron's employment and the circumstances surrounding the decision to terminate Bergeron's employment.

8.      Dr. Hector Cabrera – 7630 Jeannette Street, New Orleans, LA, 70118 - expected to testify regarding Bergeron's allergy and accommodations.

9.      Dr. Long Nguyen – 6307 Mosswood Dr, Monroe, LA, 70006 - expected to testify regarding Bergeron's employment and seafood exposure.

10.     Any witness needed to authenticate documents.

11.     Any witness needed for impeachment purposes.

12.     Any witness needed for rebuttal.

Defendant's Witness List was filed in accordance with prior court order.

The witness lists were filed in accordance with the Federal Rules of Civil Procedure and prior Court Orders. No other witnesses shall be allowed unless their addition is agreeable to all parties and does not affect the trial date. This restriction will not apply to rebuttal witnesses or documents whose necessity cannot be reasonably anticipated.

**14.    Jury/Non-Jury Trial**

This case is a jury case.

Proposed jury instructions, special jury interrogatories, trial memoranda, and any special questions that the Court is asked to put to prospective jurors on voir dire shall be electronically filed with the Court not later than seven full working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

**15.    Trial of Liability/Damages**

The issue of liability (will or will not) be tried separately from that of quantum.

34

**16.** <u>**Other Matters to Expedite a Disposition of the Case**</u>

The parties are not currently aware of any other matters that might expedite a disposition of the case other than Defendant's pending summary judgment motion.

**17.** <u>**Trial Date and Estimated Trial Time**</u>

Trial shall commence on May 16, 2022 at 9:00 a.m., and, pursuant to the most recent Scheduling Order (Docket No. 18), trial is estimated to last four (4) days.

**18.** <u>**Parties' Appearance at Pre-Trial Conference**</u>

This Pre-Trial Order has been formulated after a conference in Court at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**19.** <u>**Settlement Discussions**</u>

The possibility of settlement of this case was considered at a conference before Magistrate Karen Wells Roby on March 24, 2022 and continuing on March 31, 2022.  The parties are continuing to explore the possibility of a resolution.

Dated: April 12, 2022                                             Respectfully submitted,


__/s/ Jessica Vasquez_____                    __/s/ Christine M. White_____
Jessica Vasquez, Esq.                                  Christine M. White
Vasquez Law Office                                     Emily Olivier Kesler
*Counsel for Plaintiff*                                  Baker, Donelson, Bearman, Caldwell
400 Poydras Street, #900                            & Berkowitz, PC
New Orleans, LA 70130                             *LCMC Urgent Care, LLC*
Tel: (504) 571-9582                                    201 St. Charles Avenue, Ste. 3600
Fax: (504) 684-1449                                   New Orleans, LA 70170
                                                                  Tel: (504) 566-8634
                                                                  Fax: (504) 636-3975

**-and-**

LAW OFFICE OF WOLFF & WOLFF
Charlsey Wolff, Esq.
2800 Veterans Memorial Blvd. Ste. 204
New Orleans, LA 70002
Tel: (504) 483-3406
Fax: (504) 229-7702
Email: charlsey@wolffatlaw.com
 *ATTORNEY FOR MYRELL BERGERON*

**SO ORDERED:**

_____
**UNITED STATES DISTRICT COURT JUDGE**